DISTRICT COURT OF BECKHAM COUNTY
STATE OF OKLAHOMA



BECKHAM COUNTY
FILED
JAN 03 2011
DONNA HOWELL, COURT CLERK
BY_____
_____ DEPUTY

| | |
|---|---|
| CACTUS DRILLING COMPANY, L.L.C., an Oklahoma Limited Liability Company,  § § § § | |
| Plaintiff, § | Case No. CJ-12-2 |
| v. § | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and CHARTIS CLAIMS, INC. § § § § § | |
| Defendant. § | |

## PETITION

Plaintiff, Cactus Drilling Company, LLC, an Oklahoma Limited Liability Company, brings this lawsuit against National Union Fire Insurance Company of Pittsburgh, PA, and Chartis Claims, Inc., for its claims against these defendants alleges as follows:

### VENUE AND JURISDICTION

1. The facts out of which this suit arises occurred in Beckham County, State of Oklahoma. Venue is proper in Beckham County pursuant to 12 Okla. Stat. sec. 127 and Okla. Const. art. 9 § 43

2. Plaintiff, Cactus Drilling, LLC, ("Cactus Drilling") is an Oklahoma Limited Liability Company, duly formed and authorized to do business in Oklahoma.

3. Defendant, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), is an insurance company incorporated under the laws of the State of Pennsylvania and may be served with process through the Oklahoma Insurance Department, Five Corporate Plaza, 3625 NW 56th, Suite 100, Oklahoma City, OK 73112, and by mailing a copy to the Defendant at

EXHIBIT 2

175 Water Street 18th Floor, New York City NY 10038.

4. Chartis Claims, Inc. is incorporated under the laws of Delaware with its principal address at 175 Water Street, 18th Floor, New York, New York, 10038. It may be served with summons by delivery to its registered agent, United States Corporation Company, 115 S. W. 89th Street, Oklahoma City, OK 73139-8511 and by mailing a copy to the defendant at 175 Water Street, 18th Floor, New York, New York, 10038.

## FACTS

5. A series of umbrella/excess policies and renewals were issued to Cactus by American International Companies through National Union Fire Insurance Company of Pittsburgh, Pa.:

- Policy Number BE 7228007      July 15, 2006, to Sept. 1, 2007
- Policy Renewal No. BE 7250708   Sept. 1, 2007, to Sept. 1, 2008
- Policy Renewal No. BE 6542958   Sept. 1, 2008, to Sept. 1, 2009
- Policy Renewal No. BE 6542996   Sept. 1, 2009, to Sept. 1, 2010

The latest policy was issued as a Chartis Umbrella Prime through National Union:

- Policy Renewal No. BE 18325127   Sept. 1, 2010, to Sept. 1, 2011

6. On November 17, 2009, when two employees, Christopher Ray Albert II and Randy Michael Baumann, were accidentally killed in the course and scope of their employment with Cactus Drilling when a portion of an oil drilling rig fractured during erection.

7. As a result of this accident, Cactus Drilling was sued in the cause of *Ryann C. Baumann, individually and as personal Representative of the Estate of Randy Michael Baumann; and Natasha Noreuil, individually and as Personal Representative of the Estate of Christopher Ray Albert II v. Cactus Drilling Company, L.L.C., an Oklahoma Limited Liability Company;*

*Stallion Oilfield Services, Ltd., a foreign limited partnership; Stallion Interests, L.L.C.; Stallion Heavy Haulers, L.P.; Stallion Acquisition LLC; and Greg Koch, an individual*, Case No. CJ-2010-86 in the District Court of Beckham County, Oklahoma ("the Underlying Suit"). The Plaintiffs in the Underlying Suit are referred to herein as "Underlying Claimants."

8. The pertinent policy that is responsive to the Underlying Suit is the Commercial Umbrella Liability Policy number 6542996 for the annual policy period commencing September 1, 2009, and ending September 1, 2010 ("the Umbrella Policy") issued by National Union to Cactus Drilling. This policy, like all of those issued by National Union to Cactus, was marketed and represented by National Union and its agents as expressly providing, in relevant part, excess employers liability coverage.

9. The 09-10 National Union Umbrella Policy listed as underlying coverage a Worker's Compensation and Employers Liability Policy numbered WA7-69D-442619-04 with $1,000,000 limits issued by Liberty Mutual Insurance Company for the annual policy period commencing September 1, 2009, and ending September 1, 2010 (the "Primary Policy").

10. The National Union and Liberty Mutual policies were in full force and effect on November 17, 2009, when the decedents of the Underlying Claimants were killed.

11. Notice was provided on a timely basis to both Liberty and National Union. Liberty undertook the defense of the Underlying Suit through counsel selected by Liberty.

12. National Union delegated the handling of this claim to its agent/employee, Chartis Claims, Inc. ("Chartis"), and thus these companies acted as a single entity in connection with the handling of the claims in question. National Union and Chartis are affiliated companies, both operating under the umbrella of Chartis Inc. All actions, omissions or allegations were taken by agents, employees or vice-principals of National Union and/or Chartis.

13. Jeannette B. Paull of Chartis Claims, Inc. was assigned to the claim and handled it through judgment in the Underlying Suit. Paull solicited and received confidential reports, information, deposition summaries, etc., from defense counsel and participated in the defense of the suit. Ms. Paul operated under the direction and control of William Bush, VP of Excess Claims for Chartis, and Charles Weber, Assistant Vice President.

14. National Union did not reserve its rights during the time of its handling of the Underlying Claims.

15. By letter dated July 6, 2011, less than seven weeks before trial, National Union wrongfully denied coverage. National Union stated that it was relying on the language of the Liberty policy as to which the National Union policy followed the form.

16. On July 14, 2011, Liberty initially denied it had any duty to indemnify. Liberty subsequently accepted coverage and paid its policy limits towards settlement of the Albert claims in the underlying case. National Union wrongfully refused to contribute $200,000 above the Liberty limits needed to reach a fair and reasonable settlement of the Albert claims. As a result, Cactus was compelled to pay this amount to bring the Albert claim to a close.

17. The limits of the Liberty Primary Policy were exhausted as a result of the settlement of the Albert claims. Accordingly, Cactus tendered defense of the case to National Union. National Union wrongfully refused to defend. Cactus has therefore incurred both trial and appellate attorneys' fees and costs necessary to the defense of the Underlying Suit.

18. The remaining claims relating to the death of Randy Michael Baumann in the Underlying Suit were tried to a jury beginning August 30, 2011.

19. The jury returned a verdict in which it found Cactus liable for $1,400,000.00, finding that Cactus was legally responsible for acts and/or omissions of its employees at the

scene of the accident in question and that such acts or omissions were committed by them with knowledge that harm was substantially certain to result. (A copy of the Verdict Forms and Instructions are attached hereto as Exhibit B.) The jury *did not find* that Cactus acted with conscious disregard, and therefore it did not award any punitive damages. Because National Union has wrongfully refused to post a supersedeas bond, Cactus has superseded the judgment, incurring the expense of a letter of credit and premiums on the bond.

20. National Union, by and through its agent/employee Chartis and attorneys acting as adjusters for National Union, has continued to wrongfully refuse to defend and/or indemnify despite numerous demands for coverage and defense made by Cactus prior to, during and after the trial of the Underlying Suit. National Union continues to refuse to fulfill its obligations under its Umbrella Policy to defend and indemnify Cactus Drilling as an insured under the Umbrella Policy.

21. National Union wrongfully refused to participate in the settlement of the Baumann claims and judgment. Cactus has now settled the Baumann claims and obtained a reasonable settlement and release of the judgment in the Underlying Suit and has had to expend moneys that should have been paid under the indemnity provisions of the National Union policy.

### DECLARATORY JUDGMENT

22. An actual controversy exists between National Union and Cactus.

23. Coverage and/or a potential for coverage existed regarding all of the underlying actions, requiring National Union, after exhaustion by the primary carrier, to defend, make reasonable efforts to settle, and indemnify the underlying actions pursuant to the terms of the Policies.

24. National Union contends that it owes no duties to Cactus to defend, reimburse defense costs, make reasonable efforts to settle, reimburse and indemnify for settlement costs regarding the Underlying Suit pursuant to the terms of the Policies.

25. As a result, an actual controversy exists between the parties with regard to National Union's duties under the policy to defend, reimburse defense costs, make reasonable efforts to settle, and indemnify for settlements in the underlying actions, and Cactus asks the Court to declare its rights and National Union's corresponding duties under the Policies.

## BREACH OF CONTRACT

26. Cactus Drilling has fulfilled all conditions precedent and obligations under the Umbrella Policy to receive the defense and, if necessary, the indemnity obligations of the Umbrella Policy.

27. The insuring agreement of the Umbrella Policy provides that National Union will "pay on behalf of the insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law by reason of Bodily Injury . . . to which this insurance applies . . . if . . . caused by an occurrence . . . and the Bodily Injury . . . is caused by an Occurrence . . . and occurs during the Policy Period."

28. The defense provisions of the Umbrella Policy provide that National Union has the "duty to defend any Suit against the Insured that seeks damages for Bodily Injury . . . covered by this policy even if the Suit is groundless, false or fraudulent when . . . the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss to which this policy applies . . . ."

29. The total applicable limits of Scheduled Underlying Insurance regarding employers liability coverage have been exhausted by payment by Liberty Mutual of its policy

limits in the settlement of the claims arising from the death of Christopher Ray Albert II. Further Plaintiff has paid the estate of Mr. Albert $200,000.00 out of its own pocket to resolve those claims when National Union breached its obligations to indemnify Plaintiff. Additionally, Plaintiff has been forced to pay for the reasonable settlement of the Baumann case and judgment.

30. The Underlying Suit sought damages for "Bodily Injury" that were allegedly caused by an event that constitutes an "Occurrence" during the policy period and all requirements of the insuring agreement are satisfied, Defendants refused to provide the defense benefits that were due to Cactus Drilling under the Umbrella Policy and refused to indemnify Plaintiff as it is obligated to do up to an amount within its policy limits.

31. National Union/Chartis denied coverage and a defense obligation in part on the basis that coverage was not available under the Underlying Policy. In fact, the underlying carrier, Liberty Mutual recognized that that policy did in fact provide coverage and exhausted its limits on the Albert claim. National Union/Chartis urges that it may assert, in addition to the defenses based on the form of the primary policy, defenses under its own terms, including whether there has been bodily injury by accident and whether there is intended harm alleged and established in the Underlying Suit. National Union ignores the fact that it actually included on this policy, when initially issued, an endorsement that specifically excluded acts where harm was "substantially certain" to result. This provision was stated to apply to states other than Oklahoma, where the Underlying Suit arose. The National Union policy was clearly intended to exclude and bar coverage only for specifically intended harm, not for "substantial certainty" torts. In any event, the interpretation urged by National Union/Chartis is contrary to the plain language used in the underlying and the umbrella policies, inconsistent with the reasonable expectations of the parties, and/or, in the alternative, based on ambiguous policy provisions,

amounts to a construction that renders the coverage illusory and results in an unconscionable interpretation of the terms.

32. National Union's conduct constitutes an unequivocal breach of the defense obligation and a breach of the indemnity obligation under the Umbrella Policy. Therefore, Plaintiffs is entitled and hereby seeks recovery of the costs of defense and attorneys fees incurred after the exhaustion of the underlying Liberty Mutual policy.

33. The Umbrella Policy provides that when National Union is obliged to "assume the defense of any Suit against the Insured that seeks damages covered by this policy, [it] will . . . investigate, negotiate and settle the Suit as we deem expedient . . . ."

34. National Union refused to investigate, negotiate or settle the Underlying Suit despite its contractual obligation to do so.

35. As a result of National Union's breach of contract and refusal to provide or pay policy benefits, National Union is liable to Cactus Drilling for breach of contract damages, including defense costs in the Underlying Suit and indemnity for all amounts paid by Cactus in settlement of the claims made in the Underlying Suit, consequential damages and for attorneys fees incurred for the prosecution of this claim.

### ESTOPPEL/WAIVER

36. For the more than five years in which it provided excess coverage to Cactus, National Union represented to Cactus that it was being provided meaningful excess coverage for employer's liability.

37. On information and belief, National Union/Chartis has provided excess employers liability coverage to other insureds for *Parret*/substantial certainty claims such as those brought in the Underlying Suit.

38. Moreover, National Union/Chartis failed to inform Cactus after notice of the Underlying Suit was provided that it was contesting or questioning coverage for employers liability as raised in the Underling Suits. Finally, on the eve of mediation and trial in the Underlying Suit, National Union denied that there was any coverage for so-called *Parret* claims in derogation of the workers compensation exclusive remedy provision.

39. National Union/Chartis participated in and its adjusters contributed to the defense and received confidential defense information in the absence of any reservation of rights seeking to preserve policy defenses regarding the Underlying Claims. National Union/Chartis intentionally relinquished the policy defenses which it now seeks to raise at the eleventh-hour.

40. Cactus detrimentally relied on the stated position of National Union/Chartis that there were no coverage issues. Moreover, Cactus detrimentally relied on the representation that National Union was in fact providing excess employers liability coverage.

41. National Union/Chartis by and through all of the afore-mentioned the acts, omissions and representations of their agents/employees and/or vice-principals has waived and/or is estopped to claim that it has no duty to defend and/or indemnify with regard to the Underlying Suit.

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

42. National Union/Chartis owed a duty of good faith and fair dealing to Cactus's refusal to undertake Cactus Drilling's defense in the Underlying Suit, refusal to indemnify for the settlement with the estate of Charles Ray Albert II and refusal to indemnify with regard to the verdict in favor of Ryann C. Baumann are breaches of the duty of good faith and fair dealing in that National Union.

43. National Union/Chartis has a duty of good faith to refrain from interfering with the insured's right to receive the benefits of the policy, must give at least the same level of consideration to the Cactus' interest as it gives to its own, must thoroughly investigate the insured's claim, including fully inquiring into all potential bases that might support coverage and/or trigger a duty to defend. National Union/Chartis has a duty to resolve all doubts concerning the duty to defend and/or indemnity in favor of the insured, must conduct reasonable settlement efforts, including both responding to overtures by the claimant, and initiating settlement negotiations when appropriate. When considering settlement of a claim for which there exists any potential of coverage, an insurer must settle the claim without consideration of coverage issues, and must instead act to protect the insured against greater liability.

44. National Union knows and had been informed before the defense was tendered to it that there has been no evidence developed in the Underlying Suit that supports the bases on which it asserts as its grounds for refusal to undertake its obligations to defend or indemnify under the Umbrella Policy.

45. National Union/Chartis' breach of the duty of good faith and fair dealing has been a proximate and/or producing cause of damage to Cactus.

46. National Union/Chartis' conduct has all been done with reckless or conscious disregard of Cactus' rights, and/or were intentional acts, gross negligence, recklessness, oppression, fraud, and/or malice. National Union/Chartis has also engaged in a series of acts designed to deny Cactus the benefits due under its Policies. Such actions or inactions by National Union were not only detrimental to Cactus, but they are also detrimental to the public in general.

47. Cactus' business has suffered as a direct result of the burden imposed upon it to defend, settle and pay a judgment in the underlying actions, all of which should have been borne

by National Union/Chartis.

48. National Union/Chartis' conduct entitles it not only to an award of actual damages, including but not limited to injury to its business, the costs of defense post-exhaustion by Liberty Mutual, and the value of the settlements in the Underlying Suit, along with interest thereon, and in addition an award of punitive damages to punish National Union and deter others from engaging in similar conduct.

## NEGLIGENCE

49. Defendants failed to exercise that degree of care which a reasonable person similarly situated would use under the same or similar circumstances.

50. Said failure was a proximate cause of damages to Plaintiff for which Plaintiff seeks recovery.

## FRAUD AND MISREPRESENTATION

51. National Union intentionally and/or negligently represented to Cactus that the policies it issued to Cactus provided excess employers liability coverage. National Union now takes the position that there is no coverage and thus the excess employers liability coverage promised is illusory.

52. In reliance on National Union's representations that meaningful employers liability coverage was in fact being provided, Cactus has paid for over five years of substantial premiums to National Union, including premiums for what National Union itself is saying is a non-existent coverage.

53. National Union is barred by its representations from now taking the position that no coverage exists.

54. In the unlikely event that it is determined that there was no coverage for the claims in the Underlying Suit under the excess umbrella liability coverage, then Cactus would submit that at the very least any and all premiums charged by National Union in any way relating to the excess employers liability coverage be returned to Cactus based upon the fraudulent, intentional and/or negligent misrepresentations made by National Union.

**WHEREFORE,** Cactus Drilling respectfully requests judgment against National Union as follows:

a. A declaratory judgment establishing its right to defense, settlement and indemnity of the underlying actions;

b. Actual, consequential, punitive and other damages in an amount to be proven at trial but exceeding $10,000;

c. Attorneys fees for the prosecution of this action;

d. Costs pursuant to 12 O.S. 2001, § 928

e. Interest at the legal rate thereon, costs of suit herein, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Roger E. Beecham*

Roger E. Beecham OBA 656
SHANNON GRACEY RATLIFF & MILLER LLP
Bank of America Plaza
901 Main Street, Suite 4600
Dallas, Texas 75202
(214) 245-3090 Main
(214) 245-3097 Fax
(214) 245-3077 Direct Dial