### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CACTUS DRILLING COMPANY, LLC,     ) | |
|                                                  ) | |
|              Plaintiff,          ) | |
|                                                  ) | |
| v.                                                   ) | Case No. CIV-12-00191-M |
|                                                  ) | |
| NATIONAL UNION FIRE INSURANCE,  ) | |
| and CHARTIS CLAIM, INC.,              ) | |
|                                                ) | |
|              Defendants.       ) | |

### ORDER

Before the Court are Defendants' Motion for Protective Order, filed February 1, 2013, Motion for Protective Order from Plaintiff's Second Requests for Production and First Request for Admissions, filed March 6, 2013, Defendants' Motion to Quash, filed February 4, 2013, Defendants' Motion to Quash Deposition of Charles Weber and Corporate Representative of National Union, filed April 11, 2013, and Defendants' Motion to Quash Deposition of Melissa Valerio, filed July 29, 2013. Plaintiff filed its responses on February 22, 2013,[1] March 27, 2013, May 24, 2013, and August 19, 2013. Defendants filed their replies on February 1, 2013, April 03, 2013, March 31, 2013, and August 26, 2013.

In addition, before the Court are Plaintiff Cactus Drilling Company, LLC's Motion for Oral

---

[1] In its response, plaintiff contests that defendants have failed to respond to plaintiff's Request for Production No. 21, which calls for defendants' underwriting files, applications, investigations, communications, documents and/or correspondence pertaining to Cactus. In their Motion for Protective Order, defendants list several requests they seek protection from; however, Request No. 21 is not one of them. The only reference to Request No. 21 in defendants' motion is when defendants inform the Court that they are still producing documents in response to Request 21. Thus, the Court does not address plaintiff's argument regarding Request No. 21 because, in their motion, defendants did not seek a protective order from responding to Request No. 21.

1

Argument, filed April 4, 2013, and Plaintiff's Motion to Set Discovery Motions for Hearing, filed August 21, 2013. Defendants filed their Response on September 11, 2013, and plaintiff filed its Reply on September 16, 2013.

I.  Introduction

This matter arises out of an insurance dispute between the insured Cactus Drilling Company, LLC ("Cactus") and the insurer National Union Fire Insurance Company ("National Union"). In 2006, Cactus obtained Commercial Umbrella Liability Policy from National Union. Chartis Claims, Inc. ("Chartis Claims") served as the administrator of the policy and Liberty Mutual Insurance Company ("Liberty Mutual") provided the underlying Worker's Compensation and Employers Liability Policy. On November 17, 2009, two Cactus employees were killed during the course and scope of their employment. The deceased's estates initiated a lawsuit against Cactus. During the lawsuit, Cactus sought Liberty Mutual and National Union to defend or indemnify Cactus for its liability in the underlying lawsuit. Liberty Mutual, the primary employer liability policy provider, indemnified plaintiff's claim up to the policy limit. Chartis Claims, however, on July 6, 2011, sent a letter to Cactus denying coverage on grounds that Cactus' Commercial Umbrella Liability Policy did not cover this incident. As a result, Cactus initiated this lawsuit against National Union and Chartis Claims asserting breach of contract, waiver and estoppel, bad faith, illusory coverage, and fraud claims.

Plaintiff served its First Set and Second Set of Discovery Requests on defendants and issued several deposition subpoenas. In addition, plaintiff served a Federal Rule of Civil Procedure 30(b)(6) Notice of Oral and Videotaped Deposition of corporate representative of National Union. In response, defendants filed two protective order motions and three motions to quash deposition

subpoenas, which are all pending before the Court. Plaintiff filed two motions of its own requesting hearing on these issues. The Court consolidates these motions and addresses them accordingly in this Order.

II.     Discussion

Defendants move this Court, pursuant to Federal Rule of Civil Procedure 26(c), for a protective order from plaintiff's First and Second Set of Discovery Requests and Rule 30(b)(6) notices sent to the corporate representative, and to quash plaintiff's several deposition subpoenas. Rule 26(c) provides, in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,
>
> (A) forbidding the disclosure or discovery; . . . .
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . . .
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]

Fed. R. Civ. P. 26(c).

The party seeking a protective order must show "good cause" for its request. *Id.*; *Am. Benefit Life Ins. Co. v. Ille*, 87 F.R.D. 540, 543 (W.D. Okla. 1978). "'Good cause' within the meaning of Rule 26(c) contemplates a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Am. Benefit*, 87 F.R.D. at 543 (quoting *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)).

Further, Federal Rule of Civil Procedure 26(b)(1) provides, in pertinent part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

### A. Defendants' Motion for Protective Order

Defendants allege that plaintiff's first set of discovery requests are irrelevant[2], overly broad, unduly burdensome, and seek legally protected documents.

#### 1. Requests for Production Nos. 7 and 8

**REQUEST 7:** All documents or communications relating to any claim for which You have contributed in any fashion to defense, settlement and/or indemnity relating to a claim where you either reserved Your rights or denied coverage relating to primary or excess employer's liability policy for any substantially certain torts on primary or excess employer's liability policy.

**REQUEST 8:** All documents relating to any other lawsuits where You were sued for declaratory relief, breach of contract or any claim related to denial of coverage for any substantially certain torts under a primary or excess liability policy providing employer's liability coverage since January 1, 2005.

---

[2] Defendants asserts throughout their motions that none of Cactus' discovery requests are relevant because: Cactus' breach of contract claim fails as a matter of law because the underlying claim is a *Parret* claim, which the insurance policy excludes; Cactus' waiver and estoppel claims fail as a matter of law because defendants have not waived nor can be estopped from raising their defense to the underlying claim; Cactus' bad faith claim fails as a matter of law as denial of coverage was legitimate and proper; and Cactus' claim that the excess employer liability coverage is illusory is without merit. In short, defendants re-argue their summary judgment motion to assert that plaintiff's requests are not relevant because defendants are entitled to summary judgment. Because this is a discovery motion, the Court will not reach the merits of plaintiff's claims, but instead addresses whether plaintiff's discovery requests are relevant to plaintiff's alleged claims.

4

First, defendants contend that these requests are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, defendants assert that whether National Union may have defended, indemnified, or paid or denied coverage for other substantial certainty claims has no bearing on whether there is coverage for this claim because Cactus did not rely on any payment of any other substantial certainty claim in purchasing this policy and the language of the policy is clear and unambiguous under Oklahoma law and, thus, extrinsic evidence is not allowed.

Second, defendants contend that these requests are overbroad and seek documents that are privileged, or contain trade secrets, proprietary and confidential business records, and/or other protected materials. Specifically, defendants contend that these requests are overbroad because the requests have no geographic limitation, and Request 7 is unbounded by time. In addition, defendants assert that Request Nos. 7 and 8 are not reasonably tailored because they seek documents relating to all affiliates of National Union and Chartis – which includes ten AIG member insurance companies, primary employer liability policies which have no bearing on the pertinent commercial liability umbrella policy at issue, and to other claims and lawsuits, with no limitation on the type of documents or information sought.

Lastly, defendants assert that complying with these requests would be oppressive and disproportionally costly. Specifically, defendants assert that they have no method of conducting a computer search for files containing "substantial certainty torts", and as such, searching for these documents through 210,461 identified claim files of National Union and its affiliates would cost approximately $4,200,000. In addition, the production of such documents involves confidential, privileged, and private information gathered in other claims, and such screening will cost additional money. Moreover, even if the requests were to be limited to excess or umbrella policies, opened

between January 1, 2005 through January 22, 2013, for losses in Oklahoma, a search for such documents would still require searching 1,839 files. Thus, defendants conclude that the burden and expense of responding, even if limited by the Court, outweigh any relevant benefit to Cactus. To the extent the Court orders defendants to produce such documents, defendants seek to be allowed to redact privileged, confidential, and other legally protected documents and provide a privilege and confidentiality log to support the redactions.

Having carefully reviewed the parties' submissions, the Court finds that Request for Production Nos. 7 and 8 seek relevant documents. Specifically, the Court finds the documents requested are relevant to plaintiff's breach of contract and bad faith claims as they call bear directly on whether the policy's language at issue is clear and unambiguous as defendants assert and may also show that Chartis has held coverage positions that are not advanced by the original drafters of the policy at issue.

The Court also finds that these requests are overbroad and not reasonably tailored in scope. Specifically, the Court finds that these requests should be limited to commercial employers excess or umbrella liability policies opened between January 1, 2005 and January 1, 2011, for losses in Oklahoma. The Court also finds that Request 8 should be limited to filings and deposition transcripts. Because of these limitations imposed, the Court does not find that defendants would be unduly burdened by responding to these requests. To the extent it becomes necessary, the Court finds that defendants should be allowed to redact privileged documents and provide a privilege log to support the redactions, and the parties should enter a protective order[3] for any confidential

---

[3] Plaintiff agrees to such protective order.

documents produced by defendants in response to plaintiff's discovery requests.[4] Accordingly, the Court grants in part and denies in part defendants' motion as it pertains to Requests Nos. 7 and 8.

    2. Requests for Production No. 13

> **REQUEST 13:** All marketing materials distributed by You to any individual or company regarding excess liability policies since January 1, 2005.

Defendants contend that this request is irrelevant, broad in time, scope and geographic area, and unduly burdensome. Specifically, defendants assert this request calls for marketing materials distributed after the date of the underlying incident on November 17, 2009 pertaining not only to National Union but also to its ten affiliates, and for excess liability policies other than Commercial Umbrella Liability, the only policy at issue. Defendants also contend that this request is unduly burdensome as it would require search of materials distributed nationwide for the past eight years on behalf of National Union and its ten affiliates. In the alternative, defendants seek the opportunity to protect any privileged, confidential, or other legally protected documents that National Union is required to produce by redacting such information from the documents and providing a privilege/confidentiality log to support the redaction.

Having carefully reviewed the parties' submissions, the Court finds that Request for Production No. 13 seeks relevant documents. Specifically, the Court finds that this request calls for documents that are relevant to plaintiff's assertions, among other claims, that the policy is ambiguous, plaintiff had a reasonable expectation of coverage, and defendants acted fraudulently

---

[4] Throughout their motions for protective order and motions to quash deposition subpoenas, defendants make the same arguments regarding privileged or confidential documents. Thus, the Court's finding that defendants should be allowed to redact privileged documents and provide a privilege log to support the redactions, and that the parties enter a protective order for any confidential documents produced by defendants in response to plaintiff's requests is dispositive of defendants' similar arguments throughout their motions.

and in bad faith when National Union denied coverage without a legitimate dispute and deviated from its promised coverage.

The Court also finds that these requests are overbroad in time, scope and geographic location. Specifically, the Court finds that this request should be limited to any marketing materials sent until the date Chartis sent the denial letter on July 6, 2011, to any marketing material sent by defendants or their agents pertaining to Oklahoma and commercial employers excess or umbrella liability policies. Accordingly, the Court grants in part and denies in part defendants' motion as it pertains to Request No. 13.

### 3. Requests for Production Nos. 16-17

**REQUEST 16:** All documents you received from or provided to any state or federal government official or agency relating to Your compliance or alleged or possible noncompliance with any insurance regulation or standards relating to primary or excess employer's liability insurance from January 1, 2005 to the present.

**REQUEST 17:** All documents which record, evidence, or reflect any investigation conducted by any state or federal government official or agency to determine whether You had complied with any insurance regulations or standards regarding primary or excess liability policies covering employer's liability from January 1, 2005 to the present.

Defendants contend that these requests are irrelevant, overboard in time, scope and geographic area, and are unduly burdensome. Specifically, defendants assert that these documents are not relevant to whether coverage exists for the underlying claim because the policy at issue is unambiguous. In addition, defendants state that these requests do not include any geographic limitation and seek documents after the date of the incident on November 17, 2009. Moreover, defendants contend that the scope of the requests are not reasonably tailored because they seek documents pertaining to policies other than commercial umbrella liability insurance and seek documents relating generally to investigations and compliance with insurance standards or

regulations, without any nexus to this action. Lastly, defendants assert that these requests are unduly burdensome because compliance would require a search of regulatory communications nationwide for the past eight years on behalf of National Union and its ten affiliates. In its Response brief, plaintiff indicates that defendants have produced documents related to Oklahoma and to National Union or Chartis.

Having carefully reviewed the parties' submissions, the Court finds that Requests for Production Nos. 16 and 17 seek relevant document. Specifically, the Court finds that, among other things, the documents bear on the issue of whether National Union represented to any agency that insurance coverage existed and was not illusory, and whether any agency determined the policy as written complied with Oklahoma law. The Court also finds that these requests are overbroad in time, scope, and geographic area to the extent they seek documents outside the parameters of commercial employers excess or umbrella liability policies, National Union, Chartis Claims and its agents, dates between January 2006 and July 2011, and the state of Oklahoma. If the documents defendants already provided to plaintiff do not comply with the Courts' findings, the Court finds that defendants should supplement their initial response to comply with the Court's findings. Accordingly, the Court grants in part and denies in part defendants' motion as it pertains to Requests Nos. 16 and 17.

V. Request for Production No. 23

**REQUEST 23:** All documents reflecting any loss reserves put in place for any claims made by Cactus under the Policy.

Defendants contend that this request is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence concerning insurance policy interpretation, nor is it necessarily related to a bad faith claim. In the alternative, defendants seek to limit the request to just loss

reserves for the underlying lawsuit, rather than all unrelated claims under the policy. Defendants also seek to be allowed to redact and provide a privilege/confidential log to support the redaction.

Having carefully reviewed the parties' submissions, the Court finds that Request for Production No. 23 seeks relevant documents. Specifically, the Court finds that loss reserves are relevant to the issue of defendants' awareness of the value of Cactus' claim and defendants' interpretation and position regarding Cactus' claim. The Court also finds this request is not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents other than ones pertaining to Cactus' claims. Accordingly, the Court grants in part and denies in part defendants' motion as it pertains to Request No. 23.

> B. Motion for Protective Order from Plaintiff's Second Requests for Production and First Request for Admissions

>> 1. Request for Production Nos. 2 and 3

**REQUEST 2:** All agreements between You and Chartis Claims, Inc. from 2005 to 2011.

**REQUEST 3:** All indemnity agreements between you and Chartis Claims, Inc. from 2005 to 2011.

Defendants assert that these requests are not relevant and not calculated to lead to the discovery of admissible evidence. Specifically, defendants assert that these requests seek information that has no bearing on any issues before the Court because agreements between National Union and Chartis Claims are outside of the insurance policy at issue and are not relevant to any issue of coverage, extra-contractual claim, waiver/estoppel claim, fraud claim, or any claim of illusory coverage. In addition, defendants assert that the requests are overly broad and not reasonably tailored in scope because they seek documents relating to all ten affiliates of National Union and Chartis Claims.

Having carefully reviewed the parties' submissions, the Court finds that Requests for Production Nos. 2 and 3 seek relevant documents. Specifically, the Court finds that agreements between National Union and its Claim administrator Chartis Claims are relevant to plaintiff's bad faith claim because they demonstrate the scope of authority National Union delegated to Chartis, whether Chartis received compensation that was contingent upon the approval or denial of Cactus' claims, and whether Chartis bears any of the financial risk associated with Cactus' claims. The Court also finds that these documents are overly broad to the extent they seek documents other than agreements between Chartis Claims and National Union or its agents for policies outside of Oklahoma. Accordingly, the Court grants in part and denies in part defendants' motion as it pertains to Requests Nos. 2 and 3.

    2. Request for Production No. 6

> **REQUEST 6:** All of Your rating guides, underwriting materials and manuals regarding policy forms and endorsements, writing policies and determining premiums for excess and/or umbrella coverage including employers liability insurance in Oklahoma. Cactus is willing to enter into an Agreed Protective Order regarding these documents.

Defendants assert that Request for Production No. 6 is not relevant and not calculated to lead to the discovery of admissible evidence. Specifically, defendants assert that these documents have no bearing on any issue before the Court because rating guides, underwriting materials, manuals regarding policy forms and endorsements, writing policies, and determining premiums for excess coverage are outside of the insurance policy at issue and not relevant to any of plaintiff's breach of contract, extra-contractual, waiver/estoppel, illusory coverage, or fraud claim.

Defendants also assert that Request No. 6 is overly broad and not reasonably tailored in scope. Specifically, defendants assert that this request seeks documents relating to all ten affiliates

of National Union and Chartis.  In addition, defendants state that the request is not limited to the premium involved in the National Union policy.  Moreover, defendants assert that this request is improper because it seeks unnecessary information that is confidential and competitively sensitive information pertaining to internal rating guidelines and premium calculation guidelines.

Having carefully reviewed the parties' submissions, the Court finds that Request for Production No. 6 seeks relevant documents to plaintiff's claims.  Specifically, the Court finds that plaintiff's breach of contract, bad faith, estoppel, and fraud claims stem from National Union's underwriting and claims handling  decisions on Cactus' various policies and these decisions are influenced by National Union's rating guidelines, underwriting materials and manuals.

In addition, the Court finds that plaintiff's request is overly broad and not reasonably tailored in scope to the extent it calls for documents outside of commercial employers excess or umbrella liability policies. Accordingly, the Court grants in part and denies in part defendants' motion as it pertains to Request No. 6.

        3. Requests for Production Nos. 7 and 8

**REQUEST 7:** All of Your employment files and records for Jeanette Paull, including but not limited to, any employment applications, background checks, performance reviews, documents reflecting training and qualifications, disciplinary actions involving Ms. Paull, and documents discussing or providing a review of his [sic] involvement with the claims or claims handling in the Underlying Litigation, and excluding any references to his [sic] social security number, compensation or benefits information, and protected health information.  Cactus is willing to enter into an Agreed Protective Order regarding these documents.

**REQUEST 8:** All of Your employment files and records for Charles Weber, including but not limited to, any employment applications, background checks, performance reviews, documents reflecting training and qualifications, disciplinary actions involving Mr. Weber, and documents discussing or providing a review of his involvement with the claims or claims handling in the Underlying Litigation, and excluding any references to his social security number, compensation or benefits information, and protected health information. Cactus is willing to enter into an

Agreed Protective Order regarding these documents.

Defendants assert that Requests for Production Nos. 7 and 8 are not relevant and are not calculated to lead to the discovery of admissible evidence. Specifically, defendants assert that neither Paull or Weber are parties to this suit and their employment histories or files have no bearing on the Court's review of the policy at issue and are not relevant to any of the issues before the Court.

Having carefully reviewed the parties' submission, the Court finds that Requests for Production Nos. 7 and 8 seek relevant documents to the extent they call for documents discussing or providing a review of Jeannette Paull's and Charles Webber's involvement with the claim or claims handling in the underlying litigation. To the extent these requests call for employment applications, background checks, performance reviews, documents reflecting training and qualifications, disciplinary actions against Jeannette Paull and Charles Webber,[5] the Court finds that these requests do not seek relevant documents and are not calculated to lead to the discovery of admissible evidence. Accordingly, the Court grants in part and denies in part defendants' motion as it pertains to Requests Nos. 7 and 8.

        4.. Requests for Admission Nos. 5, 6 and 10

> **REQUEST FOR ADMISSION NO. 5:** Admit or deny that National Union or its agents have indemnified for, settled or paid on claims made or suits filed in Oklahoma under primary employers' liability coverage where its insured has been alleged to have acted with Substantial Certainty of harm.
>
> **REQUEST FOR ADMISSION NO. 6:** Admit or deny that National Union or its agents have indemnified for, settled or paid on claims made or suits filed in Oklahoma under excess and/or umbrella employers' liability coverage where its insured has been alleged to have acted with Substantial Certainty of harm.

---

[5] To the extent these disciplinary actions are a result of their involvement with Cactus' claim or their claims handling in the underlying litigation, they are relevant.

**REQUEST FOR ADMISSION NO. 10:** Admit or deny that You have defended claims and/or suits in Oklahoma under either primary or excess or umbrella liability policies including employers' liability coverage where the insured has been alleged to have acted with Substantial Certainty of harm.

Defendants initially filed a response denying Requests for Admission Nos. 5, 6, and 10. Defendants now assert that these requests are irrelevant and are not reasonably calculated to lead to the discovery of admissible evidence. Specifically, defendants contend that these requests seek information that has no conceivable bearing on plaintiff's claims and are unduly burdensome for the same reasons set forth in defendants' first motion for protective order.

Plaintiff responds that defendants have already denied all these requests for admission, and are now seeking a protective order in violation of Federal Rules of Civil Procedure 36(b). Defendants reply that Rule 36(b) requires a party to seek leave of the court to amend or withdraw an admission, not a denial.[6] Furthermore, defendants contend that plaintiff has not shown how it would be prejudiced by defendants' amendment of their response.

Having carefully reviewed the parties' submissions, the Court finds that Requests for Admission Nos. 5, 6, and 10 are relevant. Specifically, the Court finds that these requests, among other things, call for information regarding how defendants handled other similar claims which are relevant to plaintiff's bad faith and breach of contract claims. The Court also finds that these requests are overbroad and not reasonably tailored in scope, and thus, should be limited to

---

[6] Rule 36(b) states that a party may not amend or withdraw an admission without leave of court after a motion. Fed. R. Civ. P. 36(b). Rule 36(b) gives a court the discretion to allow a party to withdraw or amend an admission "when the presentation of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." *Id.* The Court does not reach the issue of whether Rule 36(b) applies to denials by a party because the Court finds that defendants' should comply with plaintiff's requests within the limitations imposed by the Court.

commercial employers excess or umbrella liability policies opened between January 1, 2005 and July 6, 2011, for losses in Oklahoma. Accordingly, the Court grants in part and denies in part defendants' motion as it pertains to Request for Admissions Nos. 5, 6, and 10.

C. Defendants' first, second, and third Motions to Quash[7]

Plaintiff served deposition subpoenas to Charles Weber, William Bush, Melissa Valerio, and Jeanette Paull[8]. In addition, plaintiff served Rule 30(b)(6) Notice of Oral and Videotaped deposition of National Union's Corporate Representative. The notice sought corporate representatives to testify on seven distinct topics, ranging from underwriting to policies and procedures for reviewing claims to other claims for which defendants have provided a defense or indemnity. Further, plaintiff sought dates of availability for the deposition of employees of defendants' affiliate underwriting and business units: Melissa Valerio and David Rhodes.

Defendants seek the Court to quash the deposition subpoenas and to order Cactus to refrain from serving additional deposition subpoenas or notices.[9] Specifically, defendants assert that none of the facts sought are relevant for the reasons stated above in their motions for protective order. In addition, defendants assert that Cactus' Rule 30(b)(6) deposition notice is unduly burdensome as it seeks corporate testimony on "any instances" in which defendants have defended or indemnified

---

[7] The Court consolidates and addresses Defendants' Motion to Quash, Defendants' Motion to Quash Deposition of Charles Weber and Corporate Representative of National Union, and Defendants' Motion to Quash Deposition of Melissa Valerio in this section.

[8] It appears from the parties' filings that Jeannette Paull is no longer employed with defendants but has been deposed already; thus, the Court finds defendants' motion to quash as it pertains to Jeanette Paull to be MOOT.

[9] Defendants also contend that plaintiff's deposition subpoenas are defective; however, from the parties' submissions, it appears that plaintiff has now cured these alleged defects. Thus, the Court finds defendants' objection to be MOOT.

other *Parret*/substantial certainty claims in Oklahoma. Defendants contend that they have no way of conducting a computer search that limits files to just substantial certainty claims and searching for excess policies alone would require a manual search over 1,839 files and a minimum of nearly 1000 man hours to complete. Further, defendants assert that Valerio has already testified that she had no involvement or any first hand knowledge of the investigation or evaluation of Cactus' claim.

In response, Plaintiff assert that the witnesses posses discoverable knowledge of the claim and related matters.[10] Specifically, plaintiff asserts that defendants have listed Charles Weber as an expected witness testifying regarding the investigation, handling, and denial of the insurance claim submitted by Cactus. In addition, defendants' witness list identifies a corporate representative who is expected to testify on issues such as National Union's coverage position and claims handling. Thus, plaintiff contends that the Court should deny the motions to quash, order defendants to produce Charles Webber and a corporate representative for deposition without subpoena and award costs incurred in filing its response to defendants motion.

Defendants reply that they filed the witness list to comply with the deadline and have included a caveat that it is subject to their currently pending discovery motions and responses. In

---

[10] Plaintiff also asserts that defendants have failed to comply with Local Civil Rule LCvR37.1, requiring a conference on all discovery matters. In addition, plaintiff asserts that defendants have waived their objections to the issues regarding the deposition subpoenas. Specifically, plaintiff asserts that defendants initially promised to provide deposition dates for these individuals on numerous occasions, and plaintiff repeatedly followed up on getting these depositions set without any objections being made or raised by defendants. Thus, plaintiff concludes that defendants have waived their objections to the deposition subpoenas. Lastly, plaintiff also asserts that the Court struck defendants' motion for summary judgments so defendants' cannot make summary judgment arguments.
Having carefully reviewed the parties' submissions, the Court finds that defendants have not waived their objections. In addition, the Court denied defendants' initial Motion for Summary Judgment for failure to comply with the local rules and not on the merits.

addition, because of plaintiff's "gamesmanship", defendants assert that they should be awarded attorneys' fees in the amount $6,1200 for fees incurred in filing their motions.

Having carefully reviewed the parties' submissions, the Court finds that the deposition subpoenas issued for Charles Weber, William Bush, and Mellissa Valerio should not be quashed. Specifically, the Court finds that Charles Webber possesses discoverable knowledge of the claim and related matters because he initially received the claim, assigned it to Jeannette Paull, and monitored her action throughout the process. Similarly, in Charles Weber's absence, William Bush supervised the claim. In addition, Melissa Valerio was the Claims Liaison manager for AIG/Chartis group, was Claims Liaison for Cactus, had some involvement in Cactus' claim for excess coverage, has been listed as a witness, and may have knowledge of other claims in Oklahoma where Chartis entities have provided coverage for *Parret* claims under similar policies. Moreover, Ms. Jeanette Paull appears to have consulted Melissa Valerio and David Rhodes regarding plaintiff's claims. Thus, the Court finds that the listed individuals possess discoverable knowledge of the claim and related matters. Accordingly, the Court finds that plaintiff's deposition subpoenas should not be quashed.

    E.    <u>Attorney Fees</u>

Both parties seek to recover attorneys' fees for several of their filings pertaining to these motions. Having carefully reviewed the parties' submissions, the Court finds that attorneys' fees should not be awarded to either party.

    F.    <u>Plaintiff's Motion for Oral Argument and Motion for Hearing</u>

Plaintiff filed two motions for hearings, Plaintiff Cactus Drilling Company, LLC's Motion for Oral Argument regarding defendants' pending motions for protective order, and Plaintiff's

Motion to Set Discovery Motions for Hearing regarding pending discovery motions before the Court. The Court disposed of defendants' motions for protective order and motions to quash deposition subpoenas in this Order. In a separate Order issued this same date, the Court has also disposed of Plaintiff's Motion to Reconsider Certain of its Motions to Compel Discovery. Thus, the Court finds that all remaining pending discovery motions listed in Plaintiff's Motion to Set Discovery Motions for Hearing have been disposed of by the Court. Accordingly, the Court finds both Plaintiff Cactus Drilling Company, LLC's Motion for Oral Argument [docket no. 111] and Plaintiff's Motion to Set Discovery Motions for Hearing [docket no. 187] to be MOOT.

III.     Conclusion

Accordingly, as set forth above, the Court GRANTS in part and DENIES in part Defendants' Motion for Protective Order [docket no. 54], Motion for Protective Order from Plaintiff's Second Requests for Production and First Request for Admissions [docket no. 97], Defendants' Motion to Quash [docket no. 57], Defendants' Motion to Quash Deposition of Charles Weber and Corporate Representative of National Union, [docket no. 116], and Defendants' Motion to Quash Deposition of Melissa Valerio [docket no. 176]. In addition, the Court finds Plaintiff Cactus Drilling Company, LLC's Motion for Oral Argument [docket no. 111] and Plaintiff's Motion to Set Discovery Motions for Hearing [docket no. 187] to be MOOT.

**IT IS SO ORDERED this     3rd     day of October, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE