**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CACTUS DRILLING COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-12-00191-M |
| | ) | |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA and | ) | |
| CHARTIS CLAIMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This case is scheduled for trial on the Court's May 2014 trial docket.

Before the Court is Cactus Drilling Company, LLC's Motion for Partial Summary Judgment and Brief in Support, filed April 01, 2013. On May 31, 2013, defendants filed their response, and on June 07, 2013, Cactus filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.      Introduction

This matter arises out of an insurance dispute between the insured Cactus Drilling Company, LLC ("Cactus") and the insurer National Union Fire Insurance Company ("National Union"). In 2006, Cactus obtained Commercial Umbrella Liability Policy from National Union. Chartis Claims, Inc. ("Chartis Claims") served as the administrator of the policy and Liberty Mutual Insurance Company ("Liberty Mutual") provided the underlying Worker's Compensation and Employers Liability Policy. Subsequently, National Union issued policies covering the following time periods: 2007-08, 2008-09, and 2009-10.

On November 17, 2009, two Cactus employees were killed during the course and scope of their employment. The deceased's estates initiated a lawsuit against Cactus. During the

lawsuit, Cactus requested Liberty Mutual and National Union to defend or indemnify Cactus for its liability in the underlying lawsuit.  After initially denying Cactus' request, Liberty Mutual subsequently indemnified Cactus' claim up to the policy limit.  Chartis Claims, however, on July 6, 2011, sent a letter, on behalf of National Union, to Cactus denying coverage on grounds that Cactus' Commercial Umbrella Liability Policy did not cover this incident.  As a result, Cactus initiated this lawsuit against National Union and Chartis Claims asserting breach of contract, waiver and estoppel, bad faith, illusory coverage, negligence, and fraud claims.

II.    Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts.  Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.    Discussion

The proper construction of an insurance contract is a question of law. *Nat'l Am. Ins. Co. v. Am. Re-Ins. Co.,* 358 F.3d 736, 740 (10th Cir. 2004). The Tenth Circuit has summarized the rules governing insurance contract construction and interpretation as follows:

> In Oklahoma, unambiguous insurance contracts are construed, as are other contracts, according to their terms. The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law. Insurance contracts are ambiguous only if they are susceptible to two constructions. In interpreting an insurance contract, this Court will not make a better contract by altering a term for a party's benefit. *Max True Plastering Co. v. U.S. Fidelity & Guar. Co.,* 912 P.2d 861, 869 (Okla.1996) (footnotes omitted). In interpreting contracts, courts must view the document as a whole so as to give effect to every part of the contract and enable each clause to help interpret the others. Okla. Stat. Ann. tit. 15, § 157.

*Id.* When an insurance contract is found to be ambiguous, a court may refer to extrinsic evidence to interpret the insurance policy. *Gamble, Simmons & Co. v. Kerr-McGee Corp.*, 175 F.3d 762, 767 (10th Cir. 1999) (citation omitted). A court must also strictly construe the ambiguous policy against the insurer. *Anderson v. Cont'l Assur. Co.*, 666 P.2d 245, 246 (Okla. Civ. App. 1983); *Liberty Mut. Ins. Co. v. East Cent. Okla. Elec. Co-op*, 97 F.3d 383, 388 (10th Cir. 1996). Further, "[w]here policy language is ambiguous or where limiting language is 'masked by technical or obscure language' or 'hidden in a policy's provisions', the contract will be interpreted consistent with the reasonable expectations of a person in the position of the insured." *Am. Economy Ins. Co. v. Rutledge*, 833 F. Supp. 2d 1320, 1322 (W.D. Okla. 2011) (citing *Max True Plastering Co.*, 912 P.2d at 861).

> Under the reasonable expectation doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean. Thus, in construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma now looks to the "objectively reasonable expectations" of the insured to fashion a remedy.

*Spears v. Shelter Mut. Ins. Co.*, 73 P.3d 865, 868 (Okla. 2003).

Any change in subsequent renewal of an insurance policy that reduces the limits or coverage of the insured must be accompanied by a written notice. *See* Okla. Stat. tit. 36, § 3639(E). A notice to an insured, advising him of any changes in the insurance policy, must be clear and conspicuous. *See Wynn v. Avemco Ins. Co.*, 963 P.2d 572 (Okla. 1998). "[I]t is the duty of the insurance company to call attention to any changes in the policy." *Id.* at 574. "If the insurer fails to provide such notice, the premium, deductible, limits and coverage provided to the named insured prior to the change shall remain in effect until notice is given[.]" Okla. Stat. tit. 36, § 3639(E); *Wynn*, 963 P.2d at 574 ("it is presumed, unless a contrary intention appears, that the parties intended that the renewal policy cover the same terms, conditions, and exceptions as the original."). Similarly, in relevant parts, the Oklahoma Amendatory Endorsement, included in each of Cactus' policies, requires National Union to give 45-days advance notice of reduction in limits or coverage and that if such notice is not issued, the prior coverage terms remain in effect until such notice. *See* Mot. for Partial Summ. J. & Br. in Supp. ("Docket No. 112"), Ex. 1-1, at CACTUS 000110; Ex. 1-2, at CACTUS 000154-55; Ex. 1-3, at CACTUS 000227-28; Ex. 1-4, at CACTUS 000289-90.

In relevant part, the 2009-10[1] policy Cactus purchased provides that the policy applies only if there is a "bodily injury" that occurs during the "policy period" as a result of an "occurrence". Docket No. 112, Ex. 1-4, at CACTUS 000256. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 000276. The policy also excludes coverage for "bodily injury . . . expected or intended" from the standpoint of the insured. *Id.* at 000263. However, the original

---

[1] The previous 2006-07, 07-08, and 08-09 policies provide similar or identical language except to the extent noted in this opinion.

2006-07 policy contained an endorsement clause titled "Employers' Liability/ 'Stop-Gap'

Coverage Limitation Endorsement with Substantial Certainty Exclusion (Designated States:

North Dakota, Ohio, Washington, West Virginia, and Wyoming)" ("Endorsement 23") which

provided an exclusion in the designated states for "**Bodily Injury** intentionally caused or

aggravated by you, or **Bodily Injury** resulting from an act which is determined to have been

committed by you with the belief that an injury is substantially certain to occur."[2]   Docket No.

112, Ex. 1-1, at CACTUS 000105.    The subsequent policies issued, including the 2009-10

policy at issue, omitted Endorsement 23 and used only "Employers' Liability/Stop Gap

Limitation Endorsement".   Docket No. 112, Ex. 1-2, at CACTUS 000176; Ex. 1-3, at CACTUS

000249; and Ex. 1-4, at CACTUS 000294. These amended versions did not refer to any

"substantial certainty" torts and did not contain a limitation to any particular states. *Id.*

Cactus seeks partial summary judgment on the narrow issues of which policy provision

governs the present coverage dispute and the proper interpretation of such provisions.

Specifically, Cactus asserts that Endorsement 23 in the 2006-07 policy is incorporated into the

---

[2] The current Oklahoma Workers' Compensation Act's (the Act) exclusive remedy provision
allows employees to sue their employer only for intentional injury.  Okla. Stat. tit. 85, § 302. The
Act defines what constitutes as intentional tort. Okla. Stat. tit. 85, § 302 (B). However, at the
time of this incident,

> the exclusive remedy provision was codified at Okla. Stat. tit. 85, § 12, and it did
> not provide a specific standard for the level of intent that an injured employee was
> required to show to prove an intentional tort against his employer. In *Parret v.
> UNICCO Serv. Co.,* 127 P.3d 572 (Okla. 2005), the Oklahoma Supreme Court
> adopted the "substantial certainty" standard and held that an injured employee
> could prove an intentional tort by showing that the employer "(1) desired to bring
> about the worker's injury or (2) acted with the knowledge that such injury was
> substantially certain to result from the employer's conduct." *Id.* at 579. The
> substantial certainty standard remained in effect until it was legislatively
> overruled by a[n] amended version of § 12 that took effect on August 27, 2010.
> *See Shue v. High Pressure Transports, LLC,* 2010 WL 4824560 (N.D. Okla. Nov.
> 22, 2010).

*Pa. Mfrs. Ass'n Ins. Co. v. Lechner*, 910 F. Supp. 2d 1291, 1296 (N.D. Okla. 2012).

2009-10 policy and such policy unambiguously provides coverage for substantial certainty claims in Oklahoma. In the alternative, Cactus asserts that the terms of the insurance policy are ambiguous, and applying the reasonable expectations doctrine, Cactus had a reasonable expectation of coverage. In both scenarios, Cactus asserts that when National Union subsequently eliminated Endorsement 23 in its subsequent policy, it constituted a reduction in coverage, and because National Union failed to provide the required written notice, Endorsement 23 of the 2006-07 policy is incorporated into the 2009-10 policy.

In contrast, National Union contends that Endorsement 23 is not part of the 2009-10 policy. Specifically, National Union asserts that the policy's "occurrence" and "expected or intended" provisions unambiguously exclude substantial certainty torts as a matter of law, that Endorsement 23 did not alter this analysis, and that, in any event, Endorsement 23 did not apply to Oklahoma as the State is not on the list of designated states.  Thus, National Union asserts that there was no reduction in coverage, and as such, it was not required to provide notice. Notwithstanding, National Union asserts that even if it was legally required to provide written notice, it has provided sufficient written notice to Cactus that Endorsement 23 of the 2006-07 policy is not included in the subsequent policies.[3]

Having carefully reviewed the parties' submissions, the Court finds that Endorsement 23 of the 2006-07 policy should be incorporated into the 2009-10 policy. First, the Court finds that the policy is ambiguous in that it is susceptible to two reasonable interpretations: (1) the position advanced by National Union, that under Oklahoma law, the "occurrence" and "intended or expected" language in the policy excluded substantial certainty claims as a matter of law,

---

[3] For several reasons, Cactus objects to National Union's effort to show this through affidavits and exhibits. However, because the Court has addressed Cactus' objections in the Court's December 12, 2013 Order [docket no. 255] ruling on Cactus' motion to strike such evidence, the Court will not address Cactus' arguments here.

Endorsement 23 did not alter this analysis, and, in any event, Endorsement 23 did not apply to Oklahoma as the state is not listed on the designated states list, and (2) the position advanced by Cactus, that by specifically placing a provision that excluded bodily injuries resulting from the insured's intentional or substantial certainty acts in the five designated states and leaving out Oklahoma from that list meant that substantial certainty claims are not excluded in Oklahoma.[4] Second, construing such ambiguity in favor of the insured, the Court finds such language created a reasonable expectation of coverage in Cactus. Cactus is incorporated and headquartered in Oklahoma, where the vast majority of Cactus' operations and business are conducted. Therefore, a reasonable person in Cactus' position can expect that it is buying an excess employment liability insurance policy that provided coverage for substantial certainty claims for its employees in Oklahoma. Lastly, by eliminating Endorsement 23, National Union reduced Cactus' coverage. Thus, the Court finds that National Union failed to provide adequate written notice when it issued its subsequent policies which did not contain Endorsement 23. National Union asserts that it has provided Cactus with letters notifying it of such changes. However, those letters did not provide adequate written notice. The two letters, dated July 1, 2007, in relevant parts, both contain language that the 2006-07 policy will not be renewed, and replacement coverage "may" be issued, which "may" include reduction in coverage. *See* Defs.'

---

[4] The Court notes that courts have repeatedly found, in cases decided mostly after Cactus purchased the 2006-07 policy, that as a matter of law "substantial certainty" claims are not "occurrences" because they are not "accidents" and are excluded by the "intended or expected" provisions included in such policies. *See Compsource Okla. v. L & L Const., Inc.*, 207 P.3d 415 (Okla. Civ. App. 2008); *Pa. Mfrs.' Ass'n Ins. Co v. Lechner*, 910 F. Supp. 2d 1291 (N.D. Okla. 2012); *Am. Interstate Ins. Co. v. Wilson Paving & Excavating, Inc.*, 09-CV-342-JHP-TLW, 2010 WL 2624133 (N.D. Okla. June 25, 2010); *Evanston Ins. Co. v. Dean*, 09-CV-0049-CVE-TLW, 2009 WL 2972336 (N.D. Okla. Sept. 11, 2009). In the case at bar, however, we have more. The 2006-07 policy contained Endorsement 23, which for reasons set forth below the Court finds should be incorporated into the 2009-10 policy, which specifically excluded substantial certainty torts from coverage in some states. Oklahoma was not one of the states listed in this provision thereby creating, at the very least, an ambiguity as Cactus asserts.

Response to Pl.'s Partial Summ. J & Br. in Supp. ("Docket No. 137"), Ex. 1-1; Ex. 1-2. However, as plaintiff correctly points out, the 2007-08 policy clearly stated that it is a renewal of the 06-07 policy thereby rendering these letters inapplicable. In addition, providing a draft letter listing the amended provisions with instructions to review the policy for a complete description of coverage, as National Union alleges it has done here, *see* Docket 137, Ex. 1-3, is insufficient under these facts to give "clear and inconspicuous" notice of reduction in coverage.

Accordingly, the Court finds Endorsement 23 of the 2006-07 policy must be read as part of the subsequent renewal policies including the 2009-10 policy.

IV.     Conclusion

Accordingly, the Court GRANTS Cactus Drilling Company, LLC's Motion for Partial Summary Judgment and Brief in Support [docket no. 112].

**IT IS SO ORDERED this 10th day of February, 2014.**

_____
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE